**IN THE UNITED STATES DISTRICT COURT**
**<u>FOR THE DISTRICT OF MARYLAND</u>**
**Southern Division**

|  |  |  |
|---|---|---|
| | * | |
| **OPTICAL MECHANICS, INC.,** | | |
| | * | |
| **Plaintiff/Counter-Defendant,** | | |
| | * | |
| **v.** | | **Case No.: GJH-20-1947** |
| | * | |
| **CYMBIOMS CORPORATION,** | | |
| | * | |
| **Defendant/Counter-Plaintiff.** | | |
| | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

**<u>MEMORANDUM OPINION</u>**

Plaintiff/Counter-Defendant Optical Mechanics, Inc. ("OMI"), brought this action against Defendant/Counter-Plaintiff Cybioms Corporation ("Cybioms") alleging breach of contract, quantum meruit, and unjust enrichment. ECF No. 1. Cybioms has asserted a counterclaim for breach of contract against OMI. ECF No. 10. Now pending before the Court is OMI's Motion to Compel Arbitration and Dismiss this Action. ECF No. 6. No hearing is necessary. Loc. R. 105.6 (D. Md. 2018). For the following reasons, OMI's Motion to Compel and Dismiss is granted, in part, and denied, in part.

**I.      BACKGROUND[1]**

Cybioms was the prime contractor under a prime contract with the President of India for a project involving the construction and installation of satellite photometry and laser range systems (the "Project"). ECF No. 1 ¶ 5. On November 8, 2010, Cybioms entered into a subcontract (the "India Subcontract") with OMI in which OMI agreed to act as an independent

---

[1] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

contractor to Cybioms for the construction and installation of photometry subsystems in connection with the Project. *Id.* ¶ 6. OMI alleges that the Project was delayed due to the site being unprepared but does not state when the Project was completed. *Id.* ¶ 9. OMI further alleges that it performed all conditions, covenants, and promises required of it under the India Subcontract—and that the President of India executed a final acceptance certificate for the Project and provided Cybioms final payment under the prime contract—but Cybioms breached the India Subcontract by failing to make payments, paying OMI only $1,045,705.10 of the $2,312,375.60 total contract value. *Id.* ¶¶ 8–11.

OMI filed a Complaint in this Court on June 30, 2020. ECF No. 1. On August 4, 2020, Cybioms filed an Answer, Defenses, Counterclaim, and Jury Demand. ECF No. 5. OMI filed an Answer to Cybioms' Counterclaim on August 20, 2020. ECF No. 9. Cybioms then filed an Amended Answer and Counterclaim on August 21, 2020. ECF No. 10. Finally, OMI filed an Answer to Cybioms' Amended Counterclaim on September 2, 2020. ECF No. 13.

In its Amended Answer and Counterclaim, Cybioms asserted a breach of contract counterclaim against OMI, alleging that OMI was a subcontractor on multiple subcontracts and purchase orders for the provision of advanced telescope domes, equipment, software, and installation and support services to customers of Cybioms—including the government or President of India as well as a customer in Finland (the "Finland Subcontract")—but that OMI either failed to deliver goods or delivered faulty or defective goods. *Id.* at 14–35. Cybioms further alleged that OMI anticipatorily breached these subcontracts by going out of business, shutting down operations, and announcing and declaring its insolvency. *Id.* at 33–35.

On August 5, 2020, one day after Cybioms filed its initial Answer and Counterclaim, OMI filed a Motion to Compel Arbitration and Dismiss this Action. ECF No. 6. According to

OMI, the India Subcontract contained an agreement to arbitrate any disputes arising out of or in connection with the Subcontract.[2] ECF No. 6-1 at 2. Specifically, Subcontract Clause 29, titled "Settlement of Disputes," states:

> Any disputes or differences including those considered as such by only one of the PARTIES arising out of or in connection with this SUBCONTRACT shall be, to the extent possible, settled amicably between PARTIES. If amicable settlement cannot be reached, then all disputes shall be settled by arbitration as defined in Clause-30.

ECF No. 6-1 at 23. Subcontract Clause 30, titled "Arbitration," states:

> In the event of any CONTRACTOR'S dispute or difference arising out of or in connection with this SUBCONTRACT, then the same shall be settled amicably by mutual consultation or through the good offices of the Agencies of the respective State Governments. If such resolution is not possible, then the unresolved dispute or difference shall be referred to the Sole Arbitration by a person appointed by the Maryland Chamber of Commerce. The decision of the Arbitrator shall be final and binding upon the Parties and the expenses of the arbitration shall be paid as may be determined by the Arbitrator.

*Id.* at 23–24. The words "Agencies," "State Governments," and "Sole Arbitration" in Clause 30 are capitalized, but they are not defined in the Subcontract. *See* ECF No. 6-1 at 2 n.1; *Id.* at 11–12. Additionally, according to OMI, upon information and belief, the Maryland Chamber of Commerce does not offer arbitration services. ECF No. 6-1 at 2 n.1.

Cybioms filed a Response in Opposition to OMI's Motion to Compel on August 25, 2020. ECF. No. 11. OMI replied on September 8, 2020. ECF No. 14.

## II.    STANDARD OF REVIEW

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16, "represents 'a liberal federal policy favoring arbitration agreements.'" *Murray v. United Food & Commercial Workers Intll Union*, 289 F.3d 297, 301 (4th Cir. 2002) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury*

---

[2] The Court has not been provided with a copy of the Finland Subcontract or the purchase owners and is unaware if they contain arbitration clauses.

*Constr. Corp.*, 460 U.S. 1, 24–25 (1983)). "The strength of this well-established policy favoring the enforcement of valid arbitration agreements, however, does not end our inquiry." *Id.* at 302. "[E]ven though arbitration has a favored place, there still must be an underlying agreement between the parties to arbitrate." *Adkins*, 303 F.3d at 501 (quoting *Arrants v. Buck*, 130 F.3d 636, 640 (4th Cir. 1997)). Accordingly, before compelling an unwilling party to arbitration, a court must "engage in a limited review to ensure that the dispute is arbitrable—i.e., that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *Murray*, 289 F.3d at 302 (quoting *Hooters of Am., Inc. v. Phillips*, 173 F.3d 933, 937 (4th Cir. 1999)).

A litigant may compel arbitration under the Federal Arbitration Act (the "FAA") if he can demonstrate "(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute." *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500–01 (4th Cir. 2002) (quoting *Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir. 1991)); *see also* 9 U.S.C. § 2 ("[A]n agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."). Regarding the second element, "[w]hether a party agreed to arbitrate a particular dispute is an issue for judicial determination to be decided as a matter of contract." *Johnson v. Circuit City Stores*, 148 F.3d 373, 377 (4th Cir. 1998) (citing *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648–49 (1986)); *Chorley Enters., Inc. v. Dickey's Barbecue Rests., Inc.*, 807 F.3d 553, 563 (4th Cir. 2015), *cert. denied*, 136 S. Ct. 1656 (2016) (finding

4

courts compel arbitration "if (i) the parties have entered into a valid agreement to arbitrate, and (ii) the dispute in question falls within the scope of the arbitration agreement"). The Court must, however, "avoid reaching the merits of arbitrable issues." *Id.* 939 n.9 (citing *Drivers, Chauffeurs, etc. v. Akers Motor Lines*, 582 F.2d 1336, 1342 (4th Cir. 1978)).

Where the parties dispute the validity of an arbitration agreement, "[m]otions to compel arbitration . . . are treated as motions for summary judgment." *Rose v. New Day Fin., LLC*, 816 F. Supp. 2d 245, 251 (D. Md. 2011). Therefore, such motions "shall [be] grant[ed] . . . if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In considering the motion, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Moreover, the Court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in h[is] favor," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002), but it also must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial," *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)).

## III.   DISCUSSION

The FAA operates to enforce an arbitration provision included in "a contract evidencing a transaction involving commerce." 9 U.S.C. § 2. The Supreme Court has interpreted this provision to "signal[] an intent to exercise Congress' commerce power to the full," *Allied–Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 271 (1995), covering a transaction that, in fact, involves

interstate commerce even if the parties did not contemplate it as such at the time of the agreement, *id.* at 281.

Here, the agreement is not only one between parties located in different states—OMI is an Iowa corporation while Cybioms is a Delaware corporation with a principal place of business located in Maryland, ECF No. 1 ¶ 1–2; ECF No. 10-1 at 2—but also the purchaser in the overall contract is the President of India, and the agreement requires the subcontractor to supply, install, and test goods at Ponmudi and Mount Abu, India, *see* ECF No. 6-1 at 11, 13, 17. Thus, "[t]he interstate nature of the transaction is apparent." *Marroquin v. Dan Ryan Builders Mid-Atl., LLC*, No. 5:19-CV-00083, 2020 WL 1171963, at *3 (W.D. Va. Mar. 11, 2020); *see also Low Country Rural Health Educ. Consortium, Inc. v. Greenway Med. Techs., Inc.*, No. 9:14-CV-00874-DCN, 2014 WL 5771850, at *5 (D.S.C. Nov. 5, 2014) ("Based on the nature of the agreement and the diversity of the parties, the contract at issue 'involves' interstate commerce under the Supreme Court's expansive interpretation of the FAA."). Moreover, because OMI alleges that the transaction is within the scope of the FAA, and Cybioms does not present evidence rebutting the applicability of this statute, the Fourth Circuit does not "read into the Act a requirement of further proof by the party invoking the federal law." *Maxum Founds., Inc. v. Salus Corp.*, 779 F.2d 974, 978 n.4 (4th Cir. 1985). Therefore, the FAA applies.

**A. Condition Precedent**

Cybioms argues that OMI has no legal right to enforce arbitration because it has failed to meet the condition precedent to arbitration stated in Clauses 29 and 30 of the India Subcontract. ECF No. 11 at 2. According to Clause 29, "[a]ny disputes or differences including those considered as such by only one of the PARTIES arising out of or in connection with this SUBCONTRACT shall be, to the extent possible, settled amicably between PARTIES." ECF

6

No. 6-1 at 23. Clause 30 provides: "[i]n the event of any CONTRACTOR's dispute or difference arising out of or in connection with this SUBCONTRACT, then the same shall be settled amicably by mutual consultation or through the good offices of the Agencies of the respective State Governments." *Id.* at 23–24. The India Subcontract contemplates that arbitration will take place after these efforts fail.

The parties differ in their characterizations of the efforts to resolve their dispute prior to arbitration—OMI says it "attempted numerous times to resolve its dispute with Cybioms prior to seeking arbitration, yet the parties were unable to resolve the dispute," ECF No. 14 at 4, while Cybioms concedes only that "a few posturing demand letters between counsel have been written," ECF No. 11 at 4. The parties also disagree on what the Subcontract actually requires— according to Cybioms, the parties must "engage in mediation or even sustained good faith negotiations," ECF No. 11 at 2, while OMI emphasizes that the parties must try to settle their disagreement "amicably '*to the extent possible*,'" a more nebulous standard, ECF No. 14 at 4 (emphasis OMI's). However, the Court need not determine precisely what settlement efforts would suffice, nor whether the parties' actions meet that standard, as whether the parties have satisfied any procedural pre-requisites to arbitration would be a question for the arbitrator.

"If the contract is silent on the matter of who primarily is to decide 'threshold' questions about arbitration, courts determine the parties' intent with the help of presumptions." *BG Grp., PLC v. Republic of Argentina*, 572 U.S. 25, 34 (2014) (using general contract interpretation principles to interpret the arbitration provision of an international treaty, and concluding that the arbitrator, not the court, must determine if a procedural condition precedent to arbitration had been satisfied). Courts presume that the parties intend courts, not arbitrators, to decide questions of "arbitrability." *Id.* "These includes questions such as 'whether the parties are bound by a

given arbitration clause,' or 'whether an arbitration clause in a concededly binding contract applies to a particular type of controversy.'" *Id.* (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002)). However, "courts presume that the parties intend arbitrators, not courts, to decide disputes about the meaning and application of particular procedural preconditions for the use of arbitration." *Id.*; *see also Dist. No. 1, Pac. Coast Dist., Marine Engineers' Beneficial Ass'n AFL-CIO v. Liberty Mar. Corp.*, 330 F. Supp. 3d 451, 459 (D.D.C. 2018) ("While the D.C. Circuit has not directly considered who should decide whether the parties have complied with a good faith negotiation provision that is a condition precedent to arbitration, other courts appear to be in agreement that it is a question for the arbitrator."); *Dialysis Access Ctr., LLC v. RMS Lifeline, Inc.*, 638 F.3d 367, 383 (1st Cir. 2011) ("Nevertheless, we do not have to resolve this disagreement because, assuming arguendo that the Arbitration Clause establishes such a pre-condition to arbitration, Appellants have not rebutted the presumption that the arbitrator should decide whether the parties complied with such a procedural pre-requisite to arbitration.").

Because the India Subcontract does not specify what entity should determine whether conditions precedent to arbitration have been met, and the parties have not rebutted the presumption in favor of the arbitrator determining that threshold question, the Court leaves that question to the arbitrator and finds that it does not defeat the Motion to Compel Arbitration.

## B.  Validity of Dispute Resolution Clauses

The Court next addresses which state's law applies to the interpretation of the India Subcontract for the purposes of determining the validity of the agreement to arbitration. *See Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 501 (4th Cir. 2002) ("Whether a party agreed to arbitrate a particular dispute is a question of state law governing contract formation."). In cases arising under diversity jurisdiction, ECF No. 1 ¶ 3 (asserting diversity jurisdiction), a district

court applies the conflict-of-law rules of the state in which it sits. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). "The Maryland Court of Appeals 'has long recognized the ability of contracting parties to specify in their contract that the laws of a particular State will apply in any dispute over the validity, construction, or enforceability of the contract[.]'" *Cleaning Authority, Inc. v. Neubert*, 739 F. Supp. 2d 807, 818 (D. Md. 2010) (quoting *Jackson v. Pasadena Receivables, Inc.*, 398 Md. 611, 617 (2007)). Under Maryland law, a contractual choice-of-law clause will be disregarded only if (1) the state whose law is chosen has no substantial relationship to the parties or the transaction; or (2) the strong fundamental public policy of the forum state precludes the application of the choice-of-law provision. *Am. Motorists Ins. Co. v. ARTRA Grp., Inc.*, 338 Md. 560, 572 (1995). Here, the India Subcontract specifies, "[t]his SUBCONTRACT shall be governed by the State of Maryland Law in the event of any dispute involving the SUBCONTRACTOR and the CONTRACTOR." ECF 6-1 at 24. Defendant's principal place of business is in Rockville, Maryland, meaning the state has a relationship to the transaction, and, because Maryland is also the forum state, there are no public policy concerns preventing Maryland law from applying. ECF No. 1 ¶ 2. Therefore, Maryland law applies to the interpretation of the India Subcontract.

Proceeding to the validity of the parties' agreement to arbitrate, although the India Subcontract contains a written agreement to arbitrate any disputes, Cybioms argues the dispute resolution clauses in Clauses 29 and 30 are invalid "because they are ambiguous, misleading, defective, and unconscionable." ECF No. 11 at 4. Specifically, while the India Subcontract requires that any dispute or differences be "settled amicably by mutual consultation or through the good offices of the Agencies of the respective State Governments," the "good offices of the Agencies of the respective State Governments" do not provide mediation services. *See id.* at 5;

ECF No. 11-2 ¶ 4. Additionally, the India Subcontract provides that "[i]f such resolution is not possible, then the unresolved dispute or difference shall be referred to the Sole Arbitration by a person appointed by the Maryland Chamber of Commerce," but the Maryland Chamber of Commerce does not provide arbitrator appointments or arbitration services. *See* ECF No. 11 at 5; ECF No. 11-2 ¶ 3. The Court also notes that "Agencies," "State Governments," and "Sole Arbitration," while capitalized, are not defined. *See* ECF No. 6-1 at 10–27; *see also id.* at 2 n.1.

*Rankin v. Brinton Woods of Frankfort, LLC*, cited by Cybioms,[3] addresses the issue of unconscionability, stating:

> An arbitration agreement is "valid and enforceable, and is irrevocable, *except* upon grounds that exist at law or in equity for the revocation of a contract." Md. Code (1974, 2013 Repl. Vol.) Courts and Judicial Proceedings Article, § 3-206(a) (emphasis added). Which means, "contract defenses, such as . . . unconscionability, may be asserted in court to invalidate an arbitration agreement." *Henry v. Gateway, Inc.*, 187 Md. App. 647, 658, 979 A.2d 287 (2009) (citation omitted).

---

[3] Given Cybioms' reliance on *Rankin*, the Court understands Cybioms to be making an argument that the ambiguity in the agreement goes to its unconscionability, consistent with the analysis in that case. *See Rankin v. Brinton Woods of Frankfort, LLC*, 241 Md. App. 604, 626 (2019); *see also Dieng v. Coll. Park Hyundai*, No. CIV.A.DKC2009-0068, 2009 WL 2096076, at *4 (D. Md. July 9, 2009) (determining whether vague and ambiguous language in the contract rendered it substantively unconscionable). This is also reflected in Cybioms' assertion that the contract's vagueness and ambiguity prevent a reasonable person from "understand[ing] his or her rights and responsibilities under the clause," ECF No. 11 at 6, mirroring the language in *Rankin*, 241 Md. App. 604, 626 ("A reasonable person . . . would not easily understand his or her rights and responsibilities under the contract. Such errors and ambiguities likewise support a finding of procedural as well as substantive unconscionability.").

However, to the extent Cybioms argues the agreement is invalid solely on the basis of its ambiguity, separate from any question of unconscionability, this argument also fails. As discussed below, the asserted ambiguities in the agreement, namely the identity of the arbitrator, do not defeat the validity of the agreement to arbitrate, as substitute arbitrators can be appointed, and there is no indication that the ambiguous terms were central to the agreement to arbitrate itself, such that the failure of those terms causes the entire agreement to fail. *See McGuire, Cornwell & Blakey v. Grider*, 771 F. Supp. 319, 320 (D. Colo. 1991). In other words, Cybioms does not argue, and the Court does not find, that the ambiguous terms were "essential" to the agreement. *See Felix v. Richard D. London & Assocs., P.C.*, No. CV GLR-19-2795, 2020 WL 4933632, at *3 (D. Md. Aug. 24, 2020) ("In Maryland, [v]agueness of expression, indefiniteness, and uncertainty as to any of the essential terms of an agreement, have often been held to prevent the creation of an enforceable contract." (internal quotation marks and citations omitted)). Nor do the asserted ambiguities relate to the parties' intent to enter into an agreement to arbitrate or to arbitrate these claims specifically. *Cf. id.* at 2–3 (rejecting party's argument that a separate clause renders the agreement to arbitrate itself ambiguous and that there was thus no "meeting of the minds regarding an agreement to arbitrate claims"); *Bhari Info. Tech. Sys. Private Ltd. v. Sriram*, 984 F. Supp. 2d 498, 506 (D. Md. Dec. 2, 2013) (finding arbitration clause ambiguous where it stated, in full, "[a]ny arbitration shall be in accordance with ICC rules" but did not actually state whether the parties agreed to arbitrate claims in the first place). Accordingly, while certain terms in the contract may be ambiguous and unclear, the parties' intent to arbitrate these claims is not.

241 Md. App. 604, 620–21 (2019). *Rankin* continues:

> There are two aspects of unconscionability – procedural and substantive – both of which must exist for a court to decline to enforce an arbitration provision.
>
> Procedural unconscionability "concerns the process of making a contract and includes such devices as the use of fine print and convoluted or unclear language, as well as deficiencies in the contract formation process, such as deception or a refusal to bargain over contract terms." *Stewart v. Stewart*, 214 Md. App. 458, 477 (2013) (internal quotations and citation omitted).
>
> Substantive unconscionability, on the other hand, "refers to contractual terms that are unreasonably or grossly favorable to the more powerful party and includes terms that attempt to alter in an impermissible manner fundamental duties otherwise imposed by the law[.]" *Stewart*, 214 Md. App. at 477–78 (internal quotations and citation omitted). They are "provisions that seek to negate the reasonable expectations of the nondrafting party, and terms unreasonably and unexpectedly harsh . . . having nothing to do with . . . central aspects of the transaction." *Id.* at 478, 76 A.3d 1221.

*Id.* at 621–22.

The court in *Rankin* found the arbitration agreement in that case, drafted by a nursing care facility and signed on behalf of an incoming patient, *id.* at 608–609, was both procedurally and substantively unconscionable. *Id.* at 626. It was procedurally unconscionable because it was a "contract of adhesion," meaning it was "drafted unilaterally by the dominant party and then presented on a 'take-it-or-leave-it' basis to the weaker party who has no real opportunity to bargain about its terms;" because it contained ambiguous language; and because the mediation and arbitration clauses were not sufficiently conspicuous. *Id.* at 623–24. The arbitration agreement was also substantively unconscionable because "[t]he binding nature of the Brinton Woods arbitration clause and the waiver of the right to a jury trial lack clarity and transparency" and fails to "provide any criteria for selection of mediators or scheduling and timing details of a mediation" or to "address the allocation of fees or costs associated with the mediation requirement." *Id.* at 625.

11

Here, by contrast, the terms in the Subcontract were not "so one-sided as to oppress or unfairly surprise an innocent party" nor was there an "egregious imbalance in the obligations and rights imposed by the arbitration clause." *Walther v. Sovereign Bank*, 386 Md. 412, 431 (2005). First, this agreement was not between a dominant party and a weaker one, but instead between two businesses. While certain language was ambiguous, the parties here are sophisticated parties that routinely enter into construction contracts. The titles of both sections—"Settlement of Disputes" and "Arbitration"—are bolded, albeit not in a way that makes them "conspicuously distinct from the rest of the clauses in the Disclosure Agreement." *Id.* at 428. Under these circumstances, the Subcontract was not procedurally unconscionable.

With respect to substantive unconscionability, OMI concedes, for the sake of argument, that "there is some ambiguity in the identity of the arbitrator that could support a finding of substantive unconscionability of the Subcontract's arbitration clause." ECF No. 14 at 7. However, unlike the contract at issue in *Rankin*, the Subcontract clearly stated that "[t]he decision of the Arbitrator shall be final and binding upon the PARTIES." ECF No. 6-1 at 24. Additionally, it determined that "the expenses of the arbitration shall be paid as may be determined by the Arbitrator," and that the arbitrator should be appointed by the Maryland Chamber of Commerce. *Id.* As noted above, the Maryland Chamber of Commerce does not provide arbitration services; however, courts have previously substituted another arbitrator where the one named in the agreement cannot or will not arbitrate the dispute. *See Astra Footwear Indus. v. Harwyn Int'l, Inc.*, 442 F. Supp. 907, 910–11 (S.D.N.Y.), *aff'd*, 578 F.2d 1366 (2d Cir. 1978) (appointing an arbitrator under 9 U.S.C. § 5[4] where parties had agreed to arbitrate contract

---

[4] Section 5 of the Federal Arbitration Act, provides: "If in the agreement provision be made for a method of naming or appointing an arbitrator . . ., such method shall be followed; but if . . . there shall be a lapse in the naming of an arbitrator . . . , then upon the application of either party to the controversy the court shall designate and appoint an arbitrator . . . ." 9 U.S.C. § 5.

disputes before the New York Chamber of Commerce but it had ceased to arbitrate disputes); *McGuire, Cornwell & Blakey v. Grider*, 771 F. Supp. 319, 320 (D. Colo. 1991) ("[A]s a general rule, where the arbitrator named in the arbitration agreement cannot or will not arbitrate the dispute, a court does not void the agreement but instead appoints a different arbitrator.").[5] Therefore, the fact that the Maryland Chamber of Commerce does not provide these services does not render the agreement to arbitrate substantively unconscionable.

Because Cybioms has not shown the agreement was procedurally or substantively unconscionable, and the terms of the agreement indicate the parties' intent to waive their rights to a jury trial and to arbitrate their disputes, the Court finds the India Subcontract is a valid and enforceable arbitration agreement.[6] Moreover, the parties do not appear to dispute that, if the agreement is enforceable, OMI's claim falls within its scope. Finally, a letter provided by OMI from the American Arbitration Association reflects OMI's attempt to arbitrate under the auspices of the American Arbitration Association. ECF No. 14-1. However, OMI states, and Cybioms does not dispute, that Cybioms refused to arbitrate. ECF No. 14 at 4. Accordingly, the elements required for the Court to compel arbitration are satisfied.

---

[5] "Where 'it is clear that the failed term is not an ancillary logistical concern but rather is as important a consideration as the agreement to arbitrate itself, a court will not sever the failed term from the rest of the agreement and the entire arbitration provision will fail.'" *McGuire, Cornwell & Blakey v. Grider*, 771 F. Supp. 319, 320 (D. Colo. 1991) (quoting *Zechman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 742 F. Supp. 1359, 1364–66 (N.D.Ill.1990)). However, because there has been no showing that naming the Maryland Chamber of Commerce as arbitrator was central to the parties' agreement to arbitrate, the arbitration provision will be enforced.

[6] OMI stated in its reply brief, without evidentiary support, that Cybioms drafted the Subcontract. ECF No. 14 at 7. Cybioms did not move to file a surreply addressing this new allegation. If true, a finding of unconscionability is clearly inappropriate. A party that drafted the contract cannot argue it was one-sided or designed to deceive itself and thus is procedurally unconscionable. And, to the extent Cybioms argues the arbitration clause is ambiguous, and thus substantively unconscionable, any ambiguities are construed against the drafter. *See, e.g.*, *Anderson Adventures LLC v. Sam & Murphy, Inc.*, 932 A.2d 1186, 1194 (Md. Ct. Spec. App. 2007); *Dann Marine Towing LC v. Gen'l Ship Repair Corp.*, 31 F. Supp. 3d 743, 748 (D. Md. 2014). However, because the allegation was only stated in OMI's reply brief without evidentiary support, the Court does not take it as true and does not rely on it in its opinion.

### C.  Waiver of Arbitration

Having concluded that the agreement to arbitrate is valid and binding, the Court now

proceeds to the question of whether OMI waived its right to arbitration by filing this suit for

damages.

"Under the Federal Arbitration Act, a party may demand a stay of federal judicial

proceedings pending exercise of a contractual right to have the subject matter of the federal

action decided by arbitration, unless the party seeking arbitration is 'in default' of that right."

*Maxum Founds., Inc. v. Salus Corp.*, 779 F.2d 974, 981 (4th Cir. 1985) (citing 9 U.S.C. § 3).

"Although this principle of 'default' is akin to waiver, the circumstances giving rise to a statutory

default are limited and, in light of the federal policy favoring arbitration, are not to be lightly

inferred." *Id.*

"[A] litigant defaults on its right to invoke the FAA where it 'so substantially utiliz[es]

the litigation machinery that to subsequently permit arbitration would prejudice the party

opposing the stay.'" *Rota-McLarty v. Santander Consumer USA, Inc.*, 700 F.3d 690, 702 (4th

Cir. 2012) (alteration in original) (quoting *Forrester v. Penn Lyon Homes, Inc.*, 553 F.3d 340,

343 (4th Cir. 2009)); *see also Iraq Middle Mkt. Dev. Found. v. Harmoosh*, 848 F.3d 235, 241

(4th Cir. 2017); *Fraser v. Merrill Lynch Pierce, Fenner & Smith, Inc.*, 817 F.2d 250, 252 (4th

Cir. 1987). "[E]ven in cases where the party seeking arbitration has invoked the 'litigation

machinery' to some degree, '[t]he dispositive question is whether the party objecting to

arbitration has suffered actual prejudice.'" *MicroStrategy, Inc. v. Lauricia*, 268 F.3d 244, 249

(4th Cir. 2001) (quoting *Fraser,* 817 F.2d at 252); *see Rota-McLarty*, 700 F.3d at 702.[7] "The

---

[7] Cybioms relies on *Cain v. Midland Funding, LLC*, to argue that "[t]here is no requirement that the party asserting waiver show prejudice." ECF No. 11 at 7 (quoting 156 A.3d 807 (2017)). However, in *Cain*, the motion to compel was filed in state court under the Maryland Uniform Arbitration Act, while this is a federal case involving an agreement subject to the FAA, and federal law requires a showing of actual

party opposing arbitration 'bears the heavy burden of proving waiver.'" *MicroStrategy Inc.*, 268 F.3d at 250 (quoting *American Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88, 95 (4th Cir. 1996)). "Any doubts as to whether the party has waived its right to compel arbitration [] must be resolved in favor of arbitration." *Am. Reliable Ins. Co. v. Stillwell*, 212 F. Supp. 2d 621, 628 (N.D.W. Va. 2002), *aff'd*, 336 F.3d 311 (4th Cir. 2003).

OMI filed a Complaint for damages on June 30, 2020. ECF No. 1. Cybioms filed an answer and counterclaims on August 4, 2020. ECF No. 5. The next day, August 5, 2020, OMI filed a Motion to Compel Arbitration and Dismiss this Action. ECF No. 6. In arguing that OMI waives its right to arbitration, Cybioms points to the fact that OMI moved to compel arbitration "[o]nly after Cybioms filed robust counterclaims under two different subcontracts and three purchase orders[.]" ECF No. 11 at 7. However, the Fourth Circuit, unlike others, does not consider the moving party's knowledge or motive, *see Rota-McLarty*, 700 F.3d at 702 & n.12. Accordingly, this Court confines its inquiry to prejudice.

The Fourth Circuit has instructed that two factors "specifically inform" the "inquiry into actual prejudice: (1) the amount of the delay; and (2) the extent of the moving party's trial-oriented activity." *Rota-McLarty*, 700 F.3d at 702; *see also Degidio v. Crazy Horse Saloon & Rest. Inc.*, 880 F.3d 135, 140 (4th Cir. 2018). Regarding the first factor, "a delay of several months, without more, is insufficient to demonstrate the opposing party suffered actual prejudice." *Rota-McLarty*, 700 F.3d at 703. As to the second factor, removing a case to federal court, filing an answer, and participating in discovery do not suffice to constitute a waiver of arbitration. *See id.* at 704.

---

prejudice. *See Castellanos v. Mariner Fin., LLC*, No. CV MJG-17-3168, 2018 WL 488725, at *2 (D. Md. Jan. 19, 2018) (refuting same *Cain*-based argument by non-moving party).

With respect to the first factor, delay, OMI filed its Motion to Compel Arbitration only a month after filing its Complaint. *See* ECF Nos. 1, 6. Cybioms does not argue, and the Court does not find, that Cybioms has suffered prejudice as a result of this delay. *See Rota-McLarty*, 700 F.3d at 703. Regarding "the extent of the moving party's trial-oriented activity," it is true that filing a complaint reflects more substantial utilization of the litigation machinery than simply removing a case to federal court. However, "a plaintiff's initiation of a lawsuit does not, by itself, result in a waiver of arbitration." *Louisiana Stadium & Exposition Dist. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 626 F.3d 156, 160 (2d Cir. 2010) (citing *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 229 (2d Cir. 2001)). Therefore, to the extent Cybioms argues that OMI waived its right to arbitration solely by filing the complaint for damages, ECF No. 11 at 6, that argument fails. Moreover, given that no other dispositive motions were filed, discovery had not begun, and neither party had achieved procedural victories, the Court does not find that Cybioms has been prejudiced by OMI's litigation activities thus far. *See Rota-McLarty*, 700 F.3d at 704 (finding no prejudice even where the parties had participated in discovery and depositions, in part because no dispositive motions had been filed); *cf. Forrester v. Penn Lyon Homes, Inc.*, 553 F.3d 340, 343 (4th Cir. 2009) (finding prejudice where the party "had engaged in extensive pretrial preparations including multiple depositions, a motion for summary judgment, motions in limine, and submission of an array of pretrial filings"); *Louisiana Stadium*, 626 F.3d at 160 ("MLPFS would be procedurally prejudiced if it were compelled to arbitrate nearly a year into the litigation with LSED, and after winning several key procedural victories[.]"). Cybioms has failed to establish the prejudice necessary to justify finding OMI defaulted on its right to enforce the arbitration agreement under the FAA. Therefore, the claims should be sent to arbitration pursuant to the parties' agreement.

Although the Court will dismiss OMI's breach of contract claim and compel arbitration of that claim, the Court will not dismiss the entire action given the survival of Cybioms' counterclaim, over which the Court has independent jurisdiction.[8] *See Nat'l Research Bureau, Inc. v. Bartholomew*, 482 F.2d 386, 388 (3d Cir. 1973) (finding that where "jurisdiction is independent, the counterclaim must be allowed to proceed without regard to the fate of the original claim"); *Aggarao v. MOL Ship Mgmt. Co.*, 675 F.3d 355, 376 n. 18 (4th Cir. 2012) (finding that if a case involves issues that "are not all subject to arbitration," then "dismissal is not appropriate"). Cybioms appears to request that the Court require the disputes stemming from the Finland Subcontract and the three purchase orders, described in its counterclaim, to be arbitrated together with the dispute arising from the India Subcontract. ECF No. 11 at 7. However, Cybioms does not state whether the Finland Subcontract and purchase orders include agreements to arbitrate. *See id.*; ECF No. 10. Absent a showing that the parties waived their right to a jury trial and agreed to arbitrate disputes arising under that subcontracts and the purchase orders, the Court will not compel arbitration of those disputes. *See Murray v. United Food and Commercial Workers Int'l Union*, 289 F.3d 297, 302 (4th Cir. 2002).[9] Instead, this action is stayed pending arbitration of Plaintiff/Counter-Defendant's claims of breach of contract, quantum meruit, and unjust enrichment related to the India Subcontract. *See U.S. ex rel. TBI Investments, Inc. v. BrooAlexa, LLC*, 119 F. Supp. 3d 512, 541 (S.D.W. Va. 2015); *Aggarao*, 675 F.3d at 376 n. 18.

---

[8] Because the parties are diverse and Cybioms seeks $104.6 million in damages for breach of contract, ECF No. 5 at 14, 20, the Court has subject matter jurisdiction over the counterclaim. *See* 28 U.S.C. § 1332.

[9] *Cf. Travel Consultants, Inc. v. Travel Mgmt. Corp.*, 367 F.2d 334, 339 (D.C. Cir. 1966) ("Consultants complains of the burden of pursuing two actions concurrently in two different forums, and asks for a ruling that either all or none of the actions be referred to arbitration. That burden falls on Consultants because it signed two different agreements with the same party, one requiring arbitration, and the other containing no arbitration provision.").

**IV.     CONCLUSION**

For the foregoing reasons, Plaintiff/Counter-Defendant's Motion to Compel, ECF No. 6, is granted, in part, and denied, in part. A separate Order shall issue.


Dated: <u>February 9, 2021</u>                          /s/_____

GEORGE J. HAZEL

United States District Judge

18